USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/16/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BOARD OF TRUSTEES OF THE LOCAL UNION NO. 373 UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY BENEFIT FUNDS,

                              Plaintiff,

-against-

MID ORANGE MECHANICAL CORP., MID-ORANGE PLUMBING AND HEATING, INC., MID-ORANGE FIRE PROTECTION CORP., 1191 DOLSONTOWN ROAD, LLC,

                              Defendants.

17-CV-2669 (NSR)

AMENDED
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

    The Board of Trustees of the Local Union No. 373 United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry Benefit Funds ("Plaintiff" or the "Funds") commenced this action by complaint filed April 13, 2017 (ECF No. 1), against Defendants Mid Orange Mechanical Corp. ("Mid-Orange"), Mid-Orange Plumbing and Heating, Inc. ("MOPHI"), Mid-Orange Fire Protection Corp. ("Mid-Orange Fire"), and 1191 Dolsontown Road, LLC ("1191 Dolsontown") (collectively, "Defendants").

    The complaint asserts claims for unpaid benefits contributions and withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as amended by the Multi-Employer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. §§ 1381 *et seq*. The complaint also seeks interest, liquidated damages, costs, and attorneys' fees.

    Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure

56 (ECF No. 207.) Defendants oppose the motion, arguing that countervailing legal authority and issues of material fact preclude judgment as a matter of law. For the following reasons, the Court grants the motion and enters summary judgment for Plaintiff with further instructions detailed below.

## BACKGROUND

### I. Procedural Background

On April 13, 2017, Plaintiff filed its initial Complaint. (ECF No. 1.) On June 14, 2017, Defendant Mid-Orange filed an Answer to the Complaint. (ECF. No. 16.) Plaintiff subsequently amended the Complaint to include a claim for the amount owed to the Funds pursuant to the Withdrawal Liability Judgment entered against Mid-Orange and MOPHI, as trades or businesses under common control, and/or in the alternative, against MOPHI as an alter ego and/or successor to Mid-Orange. (*See* Amend. Compl., ECF No. 21.) Protracted discovery followed, which was interrupted by a hiatus from about September 2018 to April 2019 so the parties could engage in settlement discussions, which ultimately proved unsuccessful. (*See* Minute Entry dated 04/03/2019.) On November 1, 2019, with leave of the Court, Plaintiff filed a motion to amend its Complaint to include Mid-Orange Fire and 1191 Dolsontown as defendants with regards to its claim for Withdrawal Liability. (ECF No. 120.) The Court granted Plaintiff's motion on October 1, 2020. (ECF No. 143.)

On October 2, 2020, Plaintiff filed its Second Amended Complaint, adding Mid-Orange Fire and 1191 Dolsontown as additional trades or businesses under common control with Mid-Orange. (ECF No. 144.) On November 24, 2020, Plaintiff filed its Third Amended Complaint, the operative complaint, which simply corrected the case caption. ("TAC," ECF No. 154.) On December 28, 2020, Defendants filed their Answer to the TAC. (ECF No. 162.) On January 10,

2022, the parties informed the Court that they had completed discovery and were unable to reach a settlement. (ECF No. 192.)

On November 7, 2022, with leave of the Court, Plaintiff filed its briefings on the instant motion: Motion for Summary Judgment ("Pl. Mot.," ECF No. 207); Memorandum of Law in Support ("Pl. Mem.," ECF No. 213); Declaration of Giacchino J. Russo in Support[1] ("Russo Decl.," ECF No. 208); Rule 56.1 Statement ("Pl.'s 56.1," ECF No. 209); Affidavit of Ludwig Bach in Support ("Bach Aff.," ECF No. 210); Affidavit of Robert Ambrosetti in Support ("Ambrosetti Aff.," ECF No. 211); Reply ("Pl. Reply," ECF No. 216); Supplemental Rule 56.1 Statement ("Pl.'s Suppl. 56.1," ECF No. 217); and Supplemental Declaration of Giacchino J. Russo in Support ("Russo Suppl. Decl.," ECF No. 218). That same day, Plaintiff filed its Affidavit in Opposition ("Hadden Aff.," ECF No. 212) and Memorandum of Law in Opposition ("Def. Opp.," ECF No. 215).

## II.  Factual and Statutory Background

### a.  Statutory Background

Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . shall make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Section 502(g)(2)(A)-(C) sets forth the damages a fiduciary may recover for or on behalf of a plan for failure to remit contributions under Section 515, including: unpaid contributions; interest on the unpaid

---

[1] Citations to exhibits attached to the Declaration of Giacchino Russo in Support ("Russo Decl."), except for Exhibit M, will use the included Bates numbers, typically located on the bottom right corner of each document. (*See* Russo Decl. at 1-993.) Citations to the Deposition of William Hadden ("Hadden Tr.") refers to Russo Decl. Ex. M. Note that exhibits attached to Supplemental Declaration of Giacchino J. Russo in Support ("Russo Supp. Decl.") do not contain Bates numbers.

contributions; and "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State Law) of the amount determined by the court [as unpaid contributions]." 29 U.S.C. ¶1132(g)(2)(A)-(C).

ERISA, as amended by the MPPAA, also subjects employers to liability for withdrawing from a multiemployer plan. Section 1381 provides "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." 29 U.S.C. § 1381(a).

    b. *Factual Background*

The facts are gleaned from the parties' Rule 56.1 statements, affidavits, declarations, and exhibits, and are not in dispute, except where so noted.

Local Union No. 373, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry ("Local 373") and employer Mid Orange Mechanical Corp., a/k/a Mid-Orange Mechanical Corporation ("Mid-Orange") entered a Collective Bargaining Agreement ("CBA"). (Pl.'s 56.1 ¶ 12.) Pursuant to the CBA, Mid-Orange agreed to contribute to the Funds, and in turn the Funds would provide fringe benefits to eligible employees. (Russo Decl., Ex. K3, at 347.) William Hadden, along with his wife Marie Hadden, are principals, shareholders, and officers of Mid-Orange. (Pl.'s 56.1 ¶¶ 18(A)(a), 18(B)(b), 26(a); Hadden Aff. ¶ 1.)

Members employed by Mid-Orange submitted their hours to the Funds for the period of April 25, 2012 through May 1, 2013. (Pl.'s 56.1 ¶¶ 14-15; Bach Aff. ¶ 4.) Pursuant the CBA, the number of hours worked are used to calculate the amount owed for benefits. (Bach Aff. ¶ 5;

Ambrosetti Aff. ¶ 4; Russo Decl., Ex. K1-3, at 244-253, 296-306, and 340-351, respectfully.) Based on the number of hours submitted during that period, the benefits amount owed to the Funds equaled $147,611.35. (Pl.'s 56.1 ¶¶ 14-15; Russo Decl., Ex. N, at 560-570.) Plaintiff alleges Mid-Orange failed to submit the benefit fund reports, while Mid-Orange claims that it did submit the required reports to Plaintiff. (Pl.'s 56.1 ¶ 13; Hadden Aff. ¶ 38.) The parties do not dispute, however, that all of Mid-Orange's financial records were lost to flooding. (Pl.'s 56.1 ¶ 17; Hadden Aff. ¶ 38.)

On May 1, 2013, Mid-Orange ceased operations. (Hadden Aff. ¶¶ 6, 28; Pl.'s 56.1 ¶18(d).) In 2013 and 2014, Plaintiff obtained judgments against Mid-Orange in both federal and state court. (Hadden Aff. ¶ 3; Pl.'s 56.1 ¶¶ 10-11.) On February 22, 2013, the New York Supreme Court entered a default judgment against Mid-Orange for $173,061.53 for unpaid benefit fund contributions to Plaintiff. (Pl.'s 56.1 ¶ 10; Hadden Aff. ¶ 3, 5; Russo Decl., Ex. I.) On July 30, 2014, Plaintiff obtained a default judgment against Mid-Orange for $631,978.00 for unpaid benefit fund contributions related to withdrawal liability from this Court. (Pl.'s 56.1 ¶ 11; Hadden Aff. ¶ 3, 5; Russo Decl., Ex. J.)

In addition to Mid-Orange, William and Marie Hadden serve as shareholders and officers for Mid-Orange Plumbing and Heating, Inc. ("MOPHI") and Mid-Orange Fire Protection Corp. ("Mid-Orange Fire"). (Pl.'s 56.1 ¶¶ 18(A)(a), 18(B)(b), 26(a); Hadden Aff. ¶¶ 1, 26.) Mid-Orange Fire is a fire protection and sprinkler systems company and was incorporated on September 13, 2005. (Pl.'s 56.1 ¶ 28(a); Hadden Aff. ¶ 21; Russo Decl., Hadden Tr. 67:4-69:8.) William Hadden is also a member and officer of 1191 Dolsontown Road, LLC ("1191 Dolsontown"), and his wife is a member as well. (Hadden Aff. ¶¶ 1, 26; Pl.'s 56.1 ¶ 25(b).) Incorporated on May 22, 2014, 1191 Dolsontown is a real estate holding company with a

5

building at 1191 Dolsontown Road, where MOPHI has its offices. (Pl.'s 56.1 ¶ 27(a), Hadden Aff. ¶¶ 25, 29.)

Plaintiff submits the instant motion for summary judgment to hold Mid-Orange and MOPHI joint and severally liable for unpaid benefit contributions accrued during the period between April 25, 2012 and May 1, 2013. (Pl. Mem. at 2.) Additionally, Plaintiff seeks to hold MOPHI, Mid-Orange Fire, and 1191 Dolsontown jointly and severally liable for the Withdrawal Liability Judgment entered against Mid-Orange on July 30, 2014 on the basis that they are "under common control" with Mid-Orange. (*Id.* at 2-3.)

Specifically, Plaintiff seeks judgment against:

(1) Mid-Orange for $147,611.35 in unpaid fringe benefit contributions for the period of April 25, 2012 to May 1, 2023;

(2) MOPHI for $147,611.35 in unpaid fringe benefit contributions for the period of April 25, 2012 to May 1, 2023, based on its alter ego and/or successor company status in relation to Mid-Orange;

(3) MOPHI for $173,061.53, based on a judgment against Mid-Orange, based on its alter ego and/or successor company status in relation to Mid-Orange; and

(4) MOPHI, Mid-Orange Fire, and 1191 Dolsontown for $631,978.00, together with actuary fees, based on a withdrawal liability judgment against Mid-Orange, based on these entities being related to Mid-Orange by way of centralized control group.

(Pl. Opp. at 1-2.) In addition to each of the judgments listed above, Plaintiff also seeks the appropriate interest and liquidated damages, attorneys' fees and court costs, and disbursements of this action. (*Id.*)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 states, in pertinent part: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party also may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party, which must identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56); *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 244 (S.D.N.Y. 2001).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013); *Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) ("The

7

function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact."). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.

## DISCUSSION

I. **$147,611.35 Unpaid Fringe Fund and Contribution Claims against Mid-Orange and MOPHI and $173,061.53 Judgment against MOPHI**

Plaintiff argues Mid-Orange and MOPHI are liable for $147,611.35 in unpaid benefit fund contributions. Plaintiff further argues MOPHI is jointly and severally liable for the judgement entered against Mid-Orange on February 22, 2013 for $173,061.53. The Court assesses each entity's liability in turn.

   a. *Mid-Orange's Liability*

Defendants do not challenge the amount owed for unpaid benefit contributions during the period April 25, 2012 through May 1, 2013 as calculated by Plaintiff. The only argument Defendants raise against Mid-Orange's liability is their contention that Mid-Orange did submit the required benefit fund reports to Plaintiff. (Hadden Aff. ¶¶ 37-38.) However, Defendants fail to offer any evidence to support this assertion, beyond asserting that Mid-Orange lost its financial records "in a catastrophic flood." (*Id.*)

In contrast, Plaintiff offers substantial evidence to support its calculations of its amounts owed as well as affidavits affirming that there are no records of Mid-Orange submitting the benefit fund reports. Plaintiff identified the operative CBAs (Russo Decl., Ex. K1-3) as well as the work time reports submitted by employees used to calculate the amount owed, showing it equals $147,611.45 (Russo Decl., Ex. N). Finally, Plaintiff submitted affidavits from Ludwig Bach, Plaintiff's Funds Manager, and Robert Ambrosetti, Business Manager of Local 373 and one of Plaintiff's members, stating that there is no record of Mid-Orange submitting the reports.

(Bach Aff. ¶ 4; Ambrosetti Aff. ¶¶ 1, 3.) The record contains no evidence to the contrary, thus Mid-Orange is liable to Plaintiff for unpaid fringe benefit contributions in the amount of $147,611.45, plus interest, liquidated damages, and reasonable costs and attorneys' fees.

      b. *MOPHI's alter ego/successor in interest status*

"The purpose of the alter ego doctrine in the ERISA context is to prevent an employer from evading its obligations under the labor laws through a sham transaction or technical change in operations." *Ret. Plan of UNITE HERE Nat. Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) (internal quotation and citation omitted). If the court determines that an entity is an alter ego, it "signifies that, for all relevant purposes, the non-signatory is legally equivalent to the signatory and is itself a party to the collective bargaining agreement." *Id.* The court applies a "flexible test" to determine an entity's alter ego status, "weigh[ing] the circumstances of the individual case." *Id.* "The hallmarks of the alter ego doctrine include whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership." *Truck Drivers Loc. Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co.*, 944 F.2d 1037, 1046 (2d Cir. 1991) (citation and internal quotation marks omitted). While the alter ego doctrine is typically applied to successor companies, it also applied to parallel companies "where the successor is merely a disguised continuance of the old employer." *Kombassan*, 261 F.3d at 288.

To determine whether an entity has successor liability, the court must assess "the facts of each case and the particular legal obligation which is at issue." *New York State Teamsters Conf. Pension & Ret. Fund v. C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 177 (2d Cir.), *cert. denied*, 142 S. Ct. 2876, 213 L. Ed. 2d 1095 (2022). To impose liability on successors, the Second Circuit has held that "(1) a successor must have notice of its predecessor, and (2) there must be

substantial continuity of identity in the business enterprise." *Id.* (citations omitted). The Supreme Court has held that courts should consider the following factors to demonstrate "substantial continuity of identity": "whether the business of both employers is essentially the same; whether the employees of the new company are doing the same jobs in the same working conditions under the same supervisors; and whether the new entity has the same production process, produces the same products, and basically has the same body of customers." *Id.* (citing *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 107 S. Ct. 2225, 96 L. Ed. 2d 22 (1987)). That said, "[u]ltimately, the question of whether there is substantial continuity between a predecessor and a successor is primarily factual in nature and is based upon the totality of the circumstances of a given situation." *Id.*

Plaintiff argues Defendants' actions constitute a "textbook example" of an employer creating a sham transaction or technical change in operations to evade its obligations of the CBA under ERISA. (Pl. Opp. at 8.) According to Plaintiff, "[t]he purpose of incorporating MOPHI in November 2012 was to facilitate the transfer of Mid-Orange to MOPHI." (*Id.* at 9.) While the two businesses overlapped in 2013, Plaintiff argues MOPHI "essentially took over" Mid-Orange through a sham transaction. (*Id.* at 8.) As evidence of this assertion, Plaintiff points to (1) Mid-Orange transferring its assets to MOPHI; (2) MOPHI's payroll starting when Mid-Orange's payroll ceased; and (3) MOPHI operating as a single employer with Mid-Orange for a period in 2013 and then as an alter ego to Mid-Orange after August 2013. (*Id.* at 9.) Upon review of the record, the Court concludes there is ample evidence to impose joint and several liability on MOPHI.

Here, Mid-Orange and MOPHI share the same officers and shareholders, namely William Hadden and his wife Marie Hadden, and William Hadden is the manager of both companies.

(Hadden Aff. ¶ 1; Pl.'s 56.1 ¶¶ 18(A)(a)-(c), 18(B)(b)-(d), 19(A)(e), 19(B)(e).) MOPHI and Mid-Orange also share the same phone number. (Pl.'s 56.1 ¶¶ 18(A)(b), (B)(b).) 67-73 Hanford Street, LLC, whose members were William and Marie Hadden, owned the business location for Mid-Orange (Pl.'s 56.1 ¶ 19(A)(a)), and MOPHI paid rent to 67-73 Hanford Street, LCC (Russo Decl., Ex. V; Russo Supp. Decl., Ex. II at 53-54).

The companies overlapped, as MOPHI was incorporated on or about November 30, 2012 (Pl.'s 56.1 ¶ 18(B)(a)) and Mid-Orange ended its business operations in 2013 (Pl.'s 56.1 ¶ 18(A)(d)). That said, eight of Mid-Orange's nine employees continued to work at MOPHI. (Pl. Mem. at 8; Pl.'s 56.1 ¶ 20.) Mid-Orange ceased payroll payments as of June 2013, and MOPHI began payroll as early as July 2013. (Russo Decl. Ex. Y at 808-812; Russo Supp. Decl., Ex. HH.) From Plaintiff's expert report, which Defendants did not rebut, Mid-Orange paid MOPHI's employees until MOPHI began payroll in late July. (Pl. Reply at 4; Russo Decl., Ex. O "Pl.'s Expert Report" at 583-584.)

William Hadden, an officer and shareholder, described Mid-Orange as doing business in "plumbing, heating" and described MOPHI as in the business of "service plumbing, heating HVAC and electric." (Pl.'s 56.1 ¶ 22 (citing Hadden Tr. 8:10-13, 43:17-22).) MOPHI had clients who were also clients of Mid-Orange, including Home Depot, Pathstone Corp., Orange Regional Medical, and New England Motor Freight, Inc. (Hadden Tr. 13:9-15:20; 74:9-77:6.) While the record is unclear as to the total number of customers of either MOPHI or Mid-Orange, Plaintiff's expert report, again not rebutted by Defendants, indicate that MOPHI's customers that had previously been customers of Mid-Orange comprised 89.18% of MOPHI's total revenue for 2013. (Pl. Reply at 4; Pl.'s Expert Report at 582-583.) Finally, in 2013, Mid-Orange and MOPHI engaged in transferring some assets: there were around fifteen financial transfers between the

two companies (Russo Decl., Ex. AA), MOPHI received two vehicles from Mid-Orange (Hadden Tr. 77:7-15; Russo Decl., Ex. BB), and MOPHI purchased from Mid-Orange tools, equipment, a pickup truck, and three vans (Russo Supp. Decl., Ex. GG).

Defendants do not dispute the basic facts outlined above. Rather, Defendants counter that former Mid-Orange employees had to interview and apply at MOPHI like any other employee and MOPHI had to competitively bid on each job. (Hadden Aff. ¶¶ 13-14.) Finally, Defendants argue Mid-Orange and MOPHI used different accountancy and legal services. (Hadden Aff. ¶¶ 8, 16.) However, Defendants fail to otherwise raise arguments or proffer factual evidence showing that the two companies' customer base, employees, operations, and/or assets are substantially different.

The above facts and circumstances support one conclusion: there is substantial continuity between MOPHI and Mid-Orange. MOPHI and Mid-Orange share the same principals, substantially the same employees, the same clients, and engaged in substantially the same business. Particularly compelling is the evidence that Mid-Orange paid payroll for MOPHI's employees until MOPHI took over paying payroll, without any gap in payment. (Pl.'s Expert Report at 584 (examining gross pay for an employee who "went from [Mid-Orange] payroll to [MOPHI] payroll without missing a week.").) In conjunction with the transfer of equipment, tools, and vehicles to MOPHI, the evidence overwhelmingly suggests that Mid-Orange transitioned into MOPHI over time.

The only challenge Defendants offer to the above conclusion is that MOPHI operates at a notably smaller scale than Mid-Orange. (Def. Opp. at 6.) MOPHI, a non-union company conducting mostly residential repair work, "generated less than 20% of revenue of Mid-Orange and employed a workforce that was approximately 10% of the workforce of Mid-Orange." (*Id.*)

12

Specifically Mid-Orange primarily conducted commercial and industrial projects, generating upwards of $4,800,000 in annual revenue and employing dozens of people. (Hadden Aff. ¶ 7.)

MOPHI operating on a smaller scale than Mid-Orange does not defeat the substantial evidence provided by Plaintiff. Even viewing the evidence in the light most favorable to Defendants, no reasonable jury could find MOPHI does not have successor liability to Mid-Orange. Upon due consideration of the parties' arguments and supporting evidence, Defendants have not shown that there is a genuine dispute of material fact. *See Kombassan Holding A.S.*, 629 F.3d at 288-289 (finding alter ego status applied). Accordingly, summary judgment is appropriate and MOPHI is jointly and severally liable for unpaid contributions to the Fund. *See LaBarbera v. C. Volante Corp.*, 164 F. Supp. 2d 321, 327 (E.D.N.Y. 2001); *Gesualdi v. Juda Const., Ltd.*, No. 10 CIV. 1799 RMB, 2011 WL 5075438, at *7-9 (S.D.N.Y. Oct. 25, 2011).

Finally, Plaintiff puts forth the same arguments in alleging MOPHI is jointly and severally for the $173,061.53 for the judgment entered against Mid-Orange on February 22, 2013. (Pl. Mem. at 6-9.) For the same reasons, the Court finds MOPHI is jointly and severally liable for the $173,061.53 judgment as well.

**II.    $631,978.00 Withdrawal Liability Judgment Against Mid-Orange**

Plaintiff argues that MOPHI, Mid-Orange Fire, and 1191 Dolsontown are jointly and severally liable for the $631,978.00 Withdrawal Liability Judgment entered against Mid-Orange. The Court assesses each entity's liability in turn.

   a.  *Mid-Orange's Liability*

As a threshold matter, Defendants argue that Mid-Orange is not liable for withdrawal liability because it falls within the "Building and Construction Industry exception," and thus if Mid-Orange cannot be held liable for withdrawal liability, then MOPHI cannot either. (Pl. Opp.

at 7.) As Plaintiff notes, Defendants "did not initiate arbitration" or "raise the alleged exception prior to the entry of judgment." (Reply at 5.) Thus, Plaintiff argues, Defendants are barred from challenging the withdrawal liability judgment entered against them under ERISA. (*Id.*) The Court agrees.

"[F]ailure to initiate arbitration within the statutory time period operates to fix withdrawal liability and foreclose any challenge to its imposition." *UNITE Nat. Ret. Fund v. Veranda Mktg. Co.*, No. 04 CIV. 9869 (BSJ), 2009 WL 2025163, at *3 (S.D.N.Y. July 13, 2009); *see also* 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made [for withdrawal liability] shall be resolved through arbitration."). Because Defendants did not engage in arbitration, Defendants cannot now challenge the Withdrawal Liability Judgment.

Regardless, Defendants fail to proffer any facts to support this assertion, other than stating that Mid-Orange "clearly" falls within the exception. At most, Mid-Orange's work is described as completing "mostly commercial and residential projects" (Hadden Aff. ¶ 7) and as engaged in the business of "plumbing, heating" (Hadden Tr. 8:10-13). Relying on the National Labor Relations Board definition, the "building and construction industry" exception is generally defined as "subsuming the provision of labor whereby materials and constituent parts may be combined on the building site to form, make, or build a structure." *Union Asphalts & Roadoils, Inc. v. MO-KAN Teamsters Pension Fund*, 857 F.2d 1230, 1234 (8th Cir. 1988) (citing *Painters, Loc. 1247 (Indio Paint & Rug Ctr.)*, 156 NLRB 951, 959 (1966)). Defendants certainly fail to provide facts for the Court to reasonably infer that Mid-Orange's "plumbing and heating" services fall within the narrowly construed exception. (*Dycom Indus., Inc. v. Pension, Hospitalization & Benefit Plan of Elec. Indus.*, No. 122CV03303PAESDA, 2022 WL 19406560,

at *4-6 (S.D.N.Y. Dec. 27, 2022), *report and recommendation adopted*, No. 22CIV3303PAESDA, 2023 WL 2625811 (S.D.N.Y. Mar. 24, 2023) (affirming arbitrator's determination that residential cable installation services did not constitute work in the "building and construction industry").

      b.  *MOPHI's Alter Ego and/or Successor Status*

The alter ego doctrine and successor liability are applicable to withdrawal liability under ERISA as well. *C&S Wholesale Grocers, Inc.*, 24 F.4th at 179 (successor liability); *Kombassan Holding A.S.*, 629 F.3d at 288 (alter ego doctrine). Both Defendants and Plaintiff again raise the same arguments as above regarding MOPHI's joint and several liability as an alter ego/successor entity of Mid-Orange. (Pl. Mem. at 10; Def. Opp. at 6-7.)

As the Court determined above, a jury could only reasonably conclude that MOPHI is a successor of Mid-Orange. Accordingly, MOPHI is jointly and severally liable for the judgment entered against Mid-Orange. *Trustees of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc.*, No. 18CV1471CBACLP, 2021 WL 1146560, at *7 (E.D.N.Y. Mar. 3, 2021), *report and recommendation adopted sub nom. Trustees of Mosaic & Terrazzo Welfare, Pension, Anuity, & Vacation Funds v. Elite Terrazzo Flooring, Inc.*, No. 18CV1471CBACLP, 2021 WL 1146113 (E.D.N.Y. Mar. 25, 2021).

      c.  *Controlled Group Liability of MOPHI, Mid-Orange Fire, and 1191 Dolsontown*

"[W]hen withdrawal liability is imposed on an employer, all other commonly controlled trades or businesses are liable as well." *UNITE Nat. Ret. Fund v. Veranda Mktg. Co.*, No. 04 CIV. 9869 (BSJ), 2009 WL 2025163, at *4 (S.D.N.Y. July 13, 2009). "In order to impose withdrawal liability on an organization other than the one obligated to the pension fund, two conditions must be satisfied: the second organization must be (1) under common control with the

obligated entity; and (2) a trade or business." *UFCW Loc. One Pension Fund v. Enivel Properties, LLC*, 791 F.3d 369, 573 (2d Cir. 2015) (citing 29 U.S.C. § 1301(b)(1)). An activity is a "trade or business" under Section 1301(b)(1) if a person or entity engages in that activity: "(1) for the primary purpose of income or profit; and (2) with continuity and regularity." *Id.*

The parties do not dispute that the entities at issue are all "under common control," and thus the Court must only decide whether MOPHI, Mid-Orange Fire, and 1191 Dolsontown are "trade[s] or business[es]." At the outset, it is clear that MOPHI is a trade or business. As discussed above, MOPHI is in the business of "service plumbing, heating HVAC and electric," has employees, customers, filed corporate tax returns. and performed work for income. (*See supra* at 11.) Nor do Defendants dispute this. Thus, the Court need only address whether Mid-Orange Fire and 1191 Dolsontown are "trade and businesses," which it does in turn.[2]

        i. *Mid-Orange Fire*

Plaintiff's principal argument is that Mid-Orange Fire is a trade or business because it filed corporate tax returns and performed work for income. (Pl. Mem. at 12.) While conceding that Mid-Orange Fire is "technically a business entity," Defendants counter that Mid-Orange Fire "does not conduct business with continuity or regularity." (Def. Opp. at 8.) Tax returns for Mid-Orange Fire show that they did engage in business activity and made income between 2012 and 2014. (Pl.'s 56.1 ¶ 28 (citing Russo Decl., Ex. EE).) Mid-Orange Fire does "sprinkler fire work only," does not have full time employees, accepts work "on a sporadic basis," has no assets, and no contracts. (Hadden Aff. ¶¶ 21-23.)

---

[2] Defendants also argue that Mid-Orange Fire and 1191 Dolsontown are not successors or alter egos of Mid-Orange. (Def. Opp. at 8.) Plaintiff, however, does not make this claim. Accordingly, the Court does not address this issue.

Unfortunately, however, Defendants adduce no evidence to corroborate that Mid-Orange Fire has no assets or contracts. And there is nothing to corroborate William Hadden's assertion that Mid-Orange Fire does work "sporadically." (Hadden Tr. 70:7-9.) Even when asked to elaborate further, Hadden simply states "[i]f we had a job that was possibly, mainly, fire protection, we would bid it and do it under that job, under that name." (*Id.* 70:10-14.) These sparse details on the "sporadic" work activity by Mid-Orange Fire fail to raise a genuine dispute of material fact. *Harris v. Metro-N. Commuter R.R.*, No. 12-CV-543 (NSR), 2014 WL 12543819, at *5 (S.D.N.Y. July 8, 2014) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") (citations omitted).

In contrast, Plaintiff proffers evidence showing that Mid-Orange Fire submitted income tax returns each year from 2012 to 2014. (Pl.'s 56.1 ¶ 28(b) (citing Russo Decl., Ex. EE.).) These income tax returns, which show Mid-Orange Fire reported income, deductions, and losses (which can be used to lower a future tax burden) tend to show that Mid-Orange Fire operated for the purpose of generating income and with continuity or regulatory. *See Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Kelly*, No. 95 C 501, 1996 WL 507258, at *9 (N.D. Ill. Sept. 4, 1996) (defendant's ranch qualified as a trade or business where defendant claimed losses on the farm). Finally, Plaintiff also points to evidence linking Mid-Orange Fire with MOPHI and Mid-Orange: Mid-Orange employees worked for Mid-Orange Fire (Hadden Tr. 70:25-76:4) and Mid-Orange Fire "did business" with MOPHI by purchasing sprinkler heads and piping from MOPHI (Hadden Tr. 83:20-86:18). These relationships between Mid-Orange Fire and Mid-Orange and MOPHI, both undisputedly trades or businesses, further supports the Court's conclusion.

Accordingly, even viewing the record in the light most favorable to Defendants, Defendants have not raised a genuine issue of material fact as to whether Mid-Orange Fire conducted business with continuity and regularity so that a jury could reasonably conclude Mid-Orange Fire was not a "trade or business" under common control with Mid-Orange. Accordingly, summary judgment in favor of Plaintiff is appropriate.

### ii.  *1191 Dolsontown*

Turning to 1191 Dolsontown, Plaintiff emphasizes that 1191 Dolsontown had collected rent pursuant to leases with other tenants, and that it was filed as an S Corporation. (Pl. Mem. at 12.) Moreover, Plaintiff also points to the relationship between MOPHI and 1191 Dolsontown, in which MOPHI operated out of 1191 Dolsontown, paid insurance on the building, and maintained the property. (*Id.* at 12.) Defendants argue that 1191 Dolsontown is a "single-asset real estate holding company," that rented out small portions of its space to other tenants, but not with continuity or regularity. (Def. Opp. at 8.)  Defendants' strongest argument, however, is that 1191 Dolsontown did not exist or own assets at the time the withdrawal liability attached. (Def. Opp. at 9; Hadden Aff. ¶¶ 27-30.) Withdrawal liability attached in May 2013, and 1191 Dolsontown was incorporated in May 2014. (Hadden Aff. ¶¶ 28-29; Pl. Reply at 7.)

"[I]t is well-established that the existence of such a controlled group is determined as of the date of the employer's withdrawal from the pension fund." *Durso v. Mod. Food Ctr., Inc.*, No. 17CIV7324LAKGWG, 2019 WL 2150424, at *12 (S.D.N.Y. May 17, 2019) (collecting cases). Undisputedly, 1191 Dolsontown was not in existence when withdrawal liability attached to Mid-Orange. Rather than address this material fact and legal rule directly, Plaintiff appears to rely on the principles of the control group rule, which is to "prevent a company from avoiding liability" and "ensure the viability of multiemployer pension plans." (Pl. Reply at 7-8.)

Acknowledging these principles, the Court also considers the purpose of the common control doctrine, which is to "fix liability upon those who were responsible at the time of withdrawal." *See Jaspan v. Certified Industries, Inc.*, 658 F. Supp. 332, 334 (partnership and corporation not in existence at the time withdrawal liability fixed are not under common control). Accordingly, because 1191 Dolsontown was not in existence as of the date of withdrawal, it was not "under common control" with Mid-Orange and therefore not jointly and severally liable for the Withdrawal Liability Judgment. *See id.* (partnership and corporation not in existence at the time withdrawal liability fixed are not under common control).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED IN PART and DENIED IN PART. The Court grants the following judgments in favor of Plaintiff, together with interest, liquidated damages, and reasonable costs and attorneys' fees:

(1) against Mid-Orange and MOPHI, jointly and severally, for $147,611.35 for unpaid fringe benefit contributions for the period of April 25, 2012 to May 1, 2023;

(2) against MOPHI for $173,061.53 for the judgment entered against Mid-Orange for unpaid benefit fund contributions to Plaintiff; and

(3) against MOPHI and Mid-Orange Fire, jointly and severally, for $631,978.00 for the unpaid Withdrawal Liability Judgment, together with actuary fees.

*See* 29 U.S.C. § 1132(g); *see also Veranda Mktg. Co.*, 2009 U.S. Dist. LEXIS 59447, at *15 (awarding the same). The Court denies Plaintiff judgment against 1191 Dolsontown for $631,978.00 for the unpaid Withdrawal Liability Judgment. Because Plaintiff's judgment against 1191 Dolsontown is denied, the Court thereby dismisses 1191 Dolsontown from the action.

By April 16, 2024, Plaintiff shall file a proposed judgment reflecting the total amount due, with supporting materials calculating and itemizing categorically any interest, liquidated damages, costs, and attorneys' fees which Plaintiff contends are due as part of the total amount. Defendant shall file any objections to the proposed judgment by May 7, 2024, and the Court will enter final judgment thereafter.

The Clerk of Court is respectfully requested to terminate the motion at ECF 207.

Dated: May 16, 2024
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge